| | | |
|---|---|---|
| **TASSEL RIDGE WINERY, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **MEMORANDUM AND ORDER** |
| | ) | |
| **WOODMILL WINERY, INC.,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**THIS MATTER** is before the Court on Plaintiff's Motion for Summary Judgment and

Memorandum in Support of Summary Judgment (Docs. 17, 20), filed on October 25, 2011, and

Defendant's Motion for Summary Judgment and Memorandum in Support of Summary

Judgment (Doc. 29), filed January 13, 2012.  Each party respectively filed a Brief in Opposition

to Motion for Summary Judgment and a reply to the opposing party's brief.  All of the

responsive pleadings were timely filed and have been fully considered by this Court.

## I. FACTUAL BACKGROUND

Plaintiff, Tassel Ridge Winery, LLC ("Tassel Ridge"), a company organized and existing

under the laws of Iowa with its principal place of business in Oskaloosa, Iowa, produces and

sells wine in interstate commerce.  Compl. 2–3.  As the Vice President and Secretary of Tassel

Ridge, Ms. Sharman Wersen is familiar with operations of the company and is directly involved

with the selection of names and trademarks for the different Tassel Ridge wines.  Wersen Decl. ¶

1.  Tassel Ridge selected the "RED, WHITE, & BLUE" mark as the name for a traditional

Concord grape-based table wine and adopted the mark through use in connection with the

production, distribution, sale, and promotion of the wine.  Pl.'s Mem. Supp. Summ. J. 2; Wersen

Decl. ¶ 2.  Pursuant to regulations of the Federal Alcohol Administration Act ("FAA Act"), 27 U.S.C. § 201 *et seq.*, Plaintiff filed an Application for a Certification of Label/Bottle Approval ("COLA") for "RED, WHITE, & BLUE" wine with the United States Alcohol and Tobacco Tax Trade Bureau ("TTB") on June 23, 2006, and label approval was granted by the TTB on July 5, 2006.  Pl.'s Mem. Supp. Summ. J. 7; Wersen Decl. ¶ 3, Ex. 2.  Tassel Ridge commenced selling "RED, WHITE, & BLUE" shortly after the COLA was issued in July of 2006 and has continuously sold "RED, WHITE, & BLUE" since July of 2006.  Pl.'s Mem. Supp. Summ. J. 2; Wersen Decl. ¶ 6, Ex. 1.  Plaintiff filed U.S. Trademark Application No. 77/306,664 for registration of the RED, WHITE, & BLUE mark in the United States Patent and Trademark Office on October 17, 2007.  Wersen Decl. ¶ 5, Ex. 2.  The application was granted, and "RED, WHITE, & BLUE" was registered for wine in Class 33 on the Principal Register as Registration No. 3,448,996 on June 17, 2008.  Wersen Decl. ¶ 5, Ex. 2.  In late February 2011, Ms. Wersen conducted an Internet search for "Red, White, and Blue wine" and discovered that WoodMill produced and sold a wine labeled "Red, White, and Blue."  Wersen Decl. ¶ 8, Ex. 8.  Upon this discovery, Tassel Ridge became concerned that WoodMill was infringing upon its "RED, WHITE, & BLUE" mark.  Wersen Decl. ¶ 8.

Defendant, WoodMill Winery Inc. ("WoodMill"), a North Carolina corporation with its principal place of business in Vale, North Carolina, also produces and sells wine.  Compl. 2–3; Answer 2.  Mr. Larry Cagle Jr. is the president of WoodMill and controls the operations and activities of the company.  Compl. 5.  WoodMill sells a blend of grape and blueberry table wine partially under the label "Red, White, and Blue," which it first began selling on July 3, 2006.  Cagle Decl. ¶ 2, Ex. 1.  Pursuant to regulations of the FAA, WoodMill was required to obtain approval for the formula and process for producing its "Red, White, and Blue" wine because it is

considered a nonstandard wine. 27 C.F.R. §§ 24.80, 24.81. WoodMill filed Form 5120.29, Formula and Process for Wine, which had the "Red, White, and Blue" label attached, with the TTB on April 7, 2006, and the formula and process were approved on April 17, 2006. Cagle Decl. ¶ 2, Def.'s Ex. 3-1. WoodMill filed the COLA, with "Red White & Blue" listed as the fanciful name, on August 28, 2006, and label approval was granted by the TTB on October 5, 2006. Cagle Decl. ¶ 2, Ex. 4.

On March 7, 2011, counsel for Tassel Ridge sent a letter to WoodMill, in which Tassel Ridge asserted its exclusive right to use the RED, WHITE, & BLUE mark, objected to WoodMill's allegedly infringing use of "Red, White, and Blue," and demanded that WoodMill cease its allegedly infringing use of "Red, White, and Blue." Wersen Decl. ¶ 8, Ex. 10. WoodMill did not respond to the March 7, 2011, cease-and-desist letter or the follow-up letter sent by Tassel Ridge on March 24, 2011. Wersen Decl. ¶ 8, Ex. 11. Counsel for Tassel Ridge telephoned Mr. Cagle on April 21, 2011, and during the telephone conversation, Mr. Cagle denied any unlawful conduct on behalf of WoodMill. Compl. 5; Answer 3. Tassel Ridge sent a final letter to Mr. Cagle on April 27, 2011, before commencing litigation on May 10, 2011.

## II. NATURE OF THE SUIT AND PROCEDURAL HISTORY

The present action arises out of a dispute concerning the federally registered "RED, WHITE, & BLUE" mark. This case is essentially a lawsuit for trademark infringement arising under the Lanham Act and North Carolina statutory and common law. On May 10, 2011, Plaintiff commenced litigation, bringing claims against Defendant for trademark infringement pursuant to 15 U.S.C. § 1114(1), false designation of origin pursuant to 15 U.S.C. § 1125(a), unfair methods of competition pursuant to N.C. Gen. Stat. § 75-1.1, and unfair business practices pursuant to North Carolina common law. On June 17, 2011, Defendant answered the Complaint,

denying all allegations of illegality and raising three affirmative defenses, and responded with counterclaims against Plaintiff for common-law trademark infringement, false designation of origin pursuant to 15 U.S.C. § 1125(a), unfair methods of competition pursuant to N.C. Gen. Stat. § 75-1.1, and unfair business practices pursuant to North Carolina common law. Defendant also seeks to have Plaintiff's federally registered trademark cancelled. Plaintiff replied to Defendant's counterclaims on July 1, 2011, denying all allegations of illegality and raising three affirmative defenses.

Section 32(1) of the Lanham Act provides a statutory cause of action and remedy for the infringement of a federally registered trademark,[1] while section 43(a) of the Lanham Act forbids unfair competition and unfair business practices involving trademark infringement, and provides a remedy for those practices.[2] *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992). Trademark infringement may be considered a cause of action arising under the more general tort of unfair competition as the essence of both claims is that infringement could cause confusion among consumers or the public.[3] *Hanover Star Milling Co. v. Metcalf*, 240 U.S. 403, 412 (1916); *Polo Fashions, Inc. v. Extra Special Prods., Inc.*, 451 F. Supp. 555, 558 (S.D.N.Y.

---

[1] Section 32(1) of the Lanham Act states that
> [a]ny person who shall, without the consent of the registrant, use in commerce any . . . colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . . shall be liable in a civil action by the registrant for the remedies hereinafter provided.

15 U.S.C. § 1114(1).

[2] Section 43(a) of the Lanham Act states that
> [a]ny person who, on or in connection with any goods . . . or any container for goods, uses in commerce any word, term, name, symbol . . . or any false designation of origin, . . . which is likely to cause confusion, or to cause mistake, . . . or in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods . . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).

[3] Unfair competition is defined as "the practice of endeavoring to pass off one's own goods or products in the market for those of another by means of imitating…the name…or other distinctive characteristic of the article or its packaging." Black's Law Dictionary 1876 (9th ed. 2009).

1978).  Thus, the success of claims brought under sections 32(1) and 43(a) of the Lanham Act will likely indicate the success of claims for unfair competition and unfair business practices brought under state statutory and common law.  *See Polo Fashion, Inc. v. Gordon Group*, 627 F. Supp. 878, 891 (M.D.N.C. 1985) ("The North Carolina law of unfair competition affords protection against the tortious appropriation of tradenames and trademarks alike."); *Polo Fashions*, 451 F. Supp. at 558 ("[C]ourts employ the same standards for determining the likelihood of confusion, regardless of the underlying theory of liability.").

Plaintiff asserts that it is entitled to summary judgment on its claims for trademark infringement, false designation of origin, unfair methods of competition, and unfair business practices.  Defendant asserts that it is entitled to summary judgment on its affirmative defense of fair use.

### III. STANDARD OF REVIEW

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The substantive law identifies which facts are material, and a dispute "over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute over facts is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*

A moving party satisfies its burden by showing that "there is an absence of evidence to support the nonmoving party's case."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  The moving party must support its assertion and inform the district court of the basis for its motion by identifying those portions of the record before the Court that demonstrate the absence of a

genuine issue of material fact. *Id.* at 323. If the moving party satisfies its burden, the

nonmoving party must establish that there are genuine issues of material fact by presenting

sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving

party." *Anderson*, 477 U.S. at 248. The nonmoving party may not rely upon mere allegations or

denials of allegations in his pleadings to defeat a motion for summary judgment. *Celotex*, 477

U.S. at 324.

When ruling on a motion for summary judgment, the Court must view the evidence and

any reasonable inferences arising therefrom in the light most favorable to the nonmoving party.

*Anderson*, 477 U.S. at 255. Nevertheless, "[w]here the record taken as a whole could not lead a

rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Ricci v.*

*DeStefano*, 129 S. Ct. 2658, 2677 (2009) (quoting *Matsushita v. Zenith Radio Corp.*, 475 U.S.

574, 587 (1986)).

IV. DISCUSSION

In order to prevail under sections 32(1) and 45(a) of the Lanham Act, Plaintiff must show

(1) that it is the owner of a valid, protectable trademark under the Lanham Act and (2) that

Defendant's use of a colorable imitation of Plaintiff's trademark is likely to create confusion

among consumers. *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 930

(4th Cir. 1995). Defendant must prove that he adopted and acquired rights to the contested

trademark prior to its registration in order to show prior use to prevail on its counterclaim for

infringement and cancellation of Plaintiff's trademark. 15 U.S.C. § 1115(b); *U.S. Search, LLC v.*

*U.S. Search.com Inc.*, 300 F.3d 517, 523 (4th Cir. 2002).

A.  Valid, Protectable Trademark

In order to prove ownership of a valid and protectable trademark under the Lanham Act, Plaintiff must present evidence establishing (1) that the registered mark is valid; (2) that Plaintiff's ownership and registration of the mark is valid; and (3) that the registrant's exclusive right to use the mark in commerce is valid.  *Sweetwater Brewing Co., LLC v. Great Am. Restaurants, Inc.*, 266 F. Supp. 2d 457, 461 (E.D. Va. 2003).  Defendant has contested the validity of Plaintiff's ownership of the mark and has sought cancellation of Plaintiff's registration by raising a counterclaim for infringement based on prior use.

1.  Validity of the Registered "RED, WHITE, & BLUE" Mark

In order to be accorded registration under the Lanham Act, a trademark must be valid and protectable at common law.  *See Time Mechanisms, Inc. v. Qonaar Corp.*, 422 F. Supp. 905, 911 (D.N.J. 1976) ("The Lanham Act provides for the registration, and not the creation, of trademark rights; it assumes the pre-existence of a trademark.").  As defined, a trademark "includes any word, name, symbol, or device . . . used . . . to identify and distinguish . . . goods . . . and to indicate the source of the goods." 15 U.S.C. § 1127.  The most important function of a trademark is to identify the origin of the good to which it is affixed.[4]  *Hanover*, 240 U.S. at 412.  A valid and protectable trademark must be inherently distinctive and therefore capable of distinguishing the goods of the owner of the mark from the goods of another.  *Two Pesos*, 505 U.S. at 768.

There are four categories of distinctiveness within which a mark may befall: (1) generic; (2) descriptive; (3) suggestive; and (4) arbitrary or fanciful.  *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9 (2d Cir. 1999).  A "fanciful," "arbitrary," or "suggestive" mark is

---

[4] This function allows consumers to recognize that an explicitly marked good originates from a specific source, so that the trademark generates good will.  The identification function also prohibits another party from applying the same mark to a good of the same description, on the basis that its doing so would be a misrepresentation from which it would profit.  *Hanover*, 240 U.S. at 412.

inherently distinctive and thus qualifies for registration under the Lanham Act. *Sara Lee Corp. v. Kayser-Roth Corp.*, 81 F.3d 455, 464 (4th Cir. 1996). By contrast, a "generic" or "descriptive" mark is not inherently distinctive and is not eligible for federal registration.[5] *Abercrombie*, 537 F.2d at 9. The Lanham Act provides for the cancellation of a registered trademark that becomes the generic name of the article it represents. 15 U.S.C. § 1064(3); *Abercrombie*, 537 F.2d at 10.

A certificate of registration issued by the United States Patent and Trademark Office provides the registrant with "prima facie evidence of (1) the validity of the mark and its registration, (2) the registrant's ownership, and (3) the registrant's 'exclusive right' to use the mark on or in connection with the goods and services specified in the certificate of registration." *U.S. Search*, 300 F.3d at 524. Plaintiff submitted a certificate of registration for the "RED, WHITE, & BLUE" trademark, which was issued to Tassel Ridge Winery, LLC, on June 17, 2008, as Registration No. 3,448,996.

Plaintiff's "RED, WHITE, & BLUE" trademark was registered under the Principal Register in International Class 33, for use in connection with wine and spirits. No evidence in the record shows that Plaintiff was required to give proof of a secondary meaning to the United States Patent and Trademark Office ("USPTO") in order to secure registration. Therefore, it may be concluded that the USPTO determined that Plaintiff's mark is inherently distinctive and is at least suggestive in terms of the category of distinctiveness. *See Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1534 (4th Cir. 1984) (deeming such determination to give "presumptive validity to the right of plaintiff to have its mark registered as suggestive" and to shift "the burden of proving the contrary to the defendant"). In the absence of evidence to the contrary, and for

---

[5] Under the Lanham Act, a descriptive mark which has acquired a secondary meaning may be registered as a valid and protectable trademark. *Abercrombie*, 537 F.2d at 9.

additional reasons discussed in section B.1, *infra*, this Court infers that Plaintiff's registered mark is inherently distinctive and therefore valid and entitled to protection. *Id.*

2. Ownership of the Registered "RED, WHITE, & BLUE" Mark

Federal registration of a trademark does not confer ownership; trademark ownership is acquired from prior appropriation and actual use in the market. *Homeowners Group, Inc. v. Home Mktg. Specialists, Inc.*, 931 F.2d 1100, 1105 (6th Cir. 1991). The party claiming ownership must be the senior user of the mark—the first party to use the mark in a genuine commercial transaction. *Emergency One, Inc. v. Am. Fire Eagle Engine Co.*, 332 F.3d 264, 267, 268 (4th Cir. 2003) ("To acquire ownership of a trademark it is not enough to have invented the mark first or even to have registered it first; the party claiming ownership must have been the first to actually use the mark in the sale of goods or services."). Generally, the senior user has priority to use the mark, to the exclusion of any subsequent, junior user. *Id.*

Merely using the mark in advertising is usually insufficient for purposes of establishing actual, commercial use. *Diamonds Direct USA, Inc. v. BFJ Holdings, Inc*., 895 F. Supp. 2d 752, 759 (E.D. Va. 2012) ("[T]o establish use[, ]advertisements must have the desired effect of penetrating the consumer market in that location."). According to 15 U.S.C. § 1127, a mark is in "use in commerce" when a mark is placed on a wine bottle sold or transported in commerce. Additionally, "use in commerce" must be lawful; commercial use that constitutes a per se violation of a federal statute is not lawful and cannot establish priority for trademark rights. *Gen. Mills Inc. v. Healthy Valley Foods*, 24 U.S.P.Q. 2d (BNA) 1270, 1273 (T.T.A.B. 1992); *Clorox Co. v. Armour-Dial, Inc.*, 214 U.S.P.Q. (BNA) 850, 851 (T.T.A.B. 1982) ("'[U]se in commerce' means a 'lawful use in commerce,' and the shipment of goods in violation of federal statute . . . may not be recognized as the basis for establishing trademark rights.").

Although federal registration of a trademark does not itself confer ownership rights, registration of a trademark under the Lanham Act creates the presumption that the registrant is the owner and senior user of the trademark and is entitled to exclusive use. *Emergency One*, 332 F.3d at 69. Plaintiff first lawfully used the "RED, WHITE, & BLUE" trademark in commerce in July of 2006, as evidenced by a computerized summary of sales receipt and the declaration of Ms. Wersen. Wersen Decl. ¶ 6, Ex. 3. Defendant must prove that it lawfully used "Red, White, and Blue" in commerce prior to July 2006 in order to rebut the presumption of Plaintiff's valid ownership and exclusive right to use.

Defendant first used "Red, White, and Blue" in regulatory filings regarding the wine on April 7, 2006, in its Form 5120.29, Formula and Process for Wine. Cagle Decl. ¶ 2, Ex. 3. Defendant also testified that it used "Red, White, and Blue" in connection with the wine on its website as early as April 12, 2006. Cagle Decl. ¶ 2, Ex. 2. However, neither using the mark in a regulatory filing nor advertising a product on its website, without more, is a sufficient commercial use to establish priority.

Defendant also offered evidence showing that it first sold wine under the "Red, White, and Blue" label on July 3, 2006. Cagle Decl. ¶ 2, Ex. 1. However, Defendant was not issued an approved COLA until October 5, 2006. Cagle Decl., ¶ 4, Ex. 4. In order to lawfully sell wine pursuant to the Federal Alcohol Administration Act, 27 U.S.C. § 201 *et seq.*, a party must appropriately package, mark, brand, and label the wine. 27 C.F.R. § 4.30. According to 27 C.F.R. § 4.50, an approved COLA, TTB Form 5100.31, must be issued before wine can be lawfully bottled or sold.[6] Therefore, any sale of Defendant's "Red, White, and Blue" wine prior to October 5, 2006, was not lawful for purposes of determining priority. *See Satinine Societa v.*

---

[6] 27 C.F.R. § 4.50 provides that " [n]o person shall bottle or pack wine, other than wine bottled or packed in U.S. Customs custody, or remove such wine from the plant where bottled or packed, unless an approved certificate of label approval, TTB Form 5100.31, is issued by the appropriate TTB officer."

*P.A.B Produits*, 209 U.S.P.Q. (BNA) 958, 964 (T.T.A.B. 1981) ("[T]here has been a *per se*

violation . . . when a regulatory statute requires that a party's labels must be registered with or

approved by the regulatory agency charged with administering the statute before his goods may

lawfully enter the stream of commerce, and the party has failed to obtain such registration or

approval.").  Defendant has not introduced any evidence to show lawful commercial use of "Red,

White, and Blue" before July 2006.

Viewing all evidentiary record in the light most favorable to Defendant, Plaintiff has

established that it is the owner of a valid, protectable trademark under the Lanham Act.

B.  Likelihood of Confusion

Plaintiff bears the burden of proving that Defendant's use of "Red, White, and Blue" is

likely to confuse consumers about the origin, nature or quality of the goods in question.  *KP*

*Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 117 (2004).

"[D]etermining the likelihood of confusion is an 'inherently factual' issue that depends on the

facts and circumstances in each case."  *Lone Star*, 43 F.3d at 933.  To succeed, Plaintiff must

show more than the possibility of confusion: Plaintiff must establish that "a reasonably prudent

consumer in the marketplace is likely to be confused as to the origin or source of the goods or

services bearing one of the marks or names at issue in the case."  *Rearden LLC v. Rearden*

*Commerce, Inc.*, 683 F.3d 1190, 1209 (9th Cir. 2012).

There are nine articulated factors that may be relevant and that the Court may here

consider: (1) the strength or distinctiveness of Plaintiff's trademark; (2) the similarity of the

marks at issue; (3) the similarity of the goods or services the marks identify; (4) the similarity of

the facilities the two parties use in their businesses; (5) the similarity of advertising used by the

two parties; (6) Defendant's intent; (7) actual confusion; (8) the quality of Defendant's product;

and (9) the sophistication of the consuming public.[7] *Pizzeria Uno*, 747 F.2d at 1527; *Sara Lee*, 81 F.3d at 463–64. These factors are not a rigid formula for infringement but "a guide—a catalog of various considerations that may be relevant in determining the ultimate statutory question of likelihood of confusion." *Anheuser-Busch, Inc. v. L & L. Wings, Inc.*, 962 F.2d 316, 320 (4th Cir. 1992). Decisive weight can be given to one factor if it is dispositive on the likelihood of confusion, and either intrinsic or extrinsic factors may weigh more heavily in the outcome. *Id.* Depending on the particular circumstances of the case, variables not enumerated may also be considered in the likelihood of confusion inquiry. *Rearden*, 683 F.3d at 1209.

Plaintiff argues that Defendant has effectively conceded that there is a likelihood of confusion because Defendant failed to introduce evidence to refute this element of Plaintiff's infringement claim. Defendant denied that its allegedly infringing activities were likely to cause confusion among consumers in the Answer. Answer 5. However, in its counterclaim for infringement against Plaintiff, Defendant alleged that Plaintiff's unauthorized use of the "RED, WHITE, & BLUE" mark is likely to cause consumer confusion as to the nature or origin of Plaintiff's goods. Answer 6. Nonetheless, Defendant did not expressly concede that its allegedly infringing activities are likely to cause consumer confusion, and Plaintiff must meet its burden in order for summary judgment to be granted.

---

[7] Defendant has raised the affirmative defense of statutory fair use, codified at 15 U.S.C. § 1115(b)(4). The elements of the affirmative defense should be evaluated and considered separately from the factors showing likelihood of confusion. If Plaintiff cannot prove likely confusion, Defendant does not need to argue fair use; if likely confusion is proven, Defendant can escape liability by establishing the elements of fair use. *KP Permanent Make-Up*, 543 U.S. at 120. However, in arguing fair use, Defendant asserts that it did not use the term "Red White and Blue" or "Red, White, and Blue" as a trademark to identify its wine, but rather as a merely descriptive term. This assertion is implicated in the Court's likelihood-of-confusion analysis, particularly with respect to the first factor listed.

1. The Strength or Distinctiveness of Plaintiff's Trademark

As noted earlier, this Court infers that Plaintiff's trademark is inherently distinctive and at least suggestive in terms of the category of distinctiveness. Defendant has not introduced evidence to refute this presumption in supporting or opposing memoranda. Arbitrary marks are common words that "neither suggest any mental image of the associated product nor describe it in any way." *Sara Lee*, 81 F.3d at 464 ("[T]hey do not suggest or describe any quality, ingredient, or characteristic of the goods they serve."). Suggestive marks

> connote, without describing, some quality, ingredient, or characteristic of the product. . . . [T]hey conjure images of the associated product[]. These marks are nevertheless not descriptive; although they are meant to project a favorable or idealistic image with which a prospective user might identify, a person without actual knowledge would have difficulty in ascertaining the nature of the products that the marks represent.

*Id.* (internal citation omitted). In contrast to suggestive marks, descriptive marks merely describe a function, use, characteristic, size, or intended purpose of the product. *Id.*

Plaintiff testified that patriotic themes were used to name and trademark many of the wines Plaintiff produces and sells, including "RED, WHITE, & BLUE," a Concord-based blend. Wersen Decl. ¶ 2. "RED, WHITE, & BLUE" was not chosen arbitrarily. "RED, WHITE, & BLUE" may project a patriotic image, connote an American-made product, and perhaps conjure the image of a product red in color, but it is unlikely that a person without actual knowledge of the product would be able to ascertain the nature of the product. Therefore Plaintiff's mark is suggestive.

2. Similarity of the Marks, the Goods the Marks Identify, the Facilities Used in Business, and Advertising

Plaintiff's "RED, WHITE, & BLUE" mark is registered as consisting of "standard characters without claim to any particular font, style, size, or color." Certificate of Trademark

Registration, Pl.'s Ex. 2. Plaintiff uses the mark on its website and on wine-bottle labels to identify a particular wine it produces and sells. Pl.'s Mem. Supp. Summ. J. 2. The wine is classified as a table red and rose wine (Pl.'s Ex. 1-1), has an alcohol content of 12.5% (Pl.'s Ex. 7-1), sells for $11 a bottle (Pl.'s Ex. A-8), and is described as a traditional sweet, Concord grape-based blend with strong grape flavors (Wersen Decl. ¶ 2). Plaintiff's "RED, WHITE, & BLUE" mark is located on the bottom center of the wine bottle label, below the "Tassel Ridge" mark and above the description "Red Wine," all of which are printed in the same font and color. ( Pl.'s Ex. 7-1. The "RED, WHITE, & BLUE" mark is smaller than the "Tassel Ridge" mark but larger than the "Red Wine" description. *Id.* Plaintiff uses its website and the "RED, WHITE, & BLUE" mark to promote the wine it produces and sells. Wersen Decl. ¶ 9; van Loben Sels Decl. ¶ 2. Plaintiff's website includes a list of wines that it produces and sells; each wine is listed by its name followed by a description of the wine and its price. van Loben Sels Decl. ¶ 2, Pl.'s Ex. A-8. The "RED, WHITE, & BLUE" mark is included as the name of the wine it identifies. Pl.'s Ex. A-8.

Defendant uses "Red, White, and Blue" on its website and on wine bottle labels to distinguish, or name, the particular wine it produces and sells. Cagle Decl. ¶ 5; Pl.'s Ex. B-1. Defendant's "Red, White, and Blue" is classified as a nonstandard, table flavored wine (Pl.'s Ex. E-1), has an alcohol content of 11% (Def.'s Ex. 4-2), sells for $12 a bottle (Pl.'s Ex. B-1), and is described as a semi-sweet blend of 30% blueberry wine, 30% red muscadine wine, and 40% golden scuppernong wine (Pl.'s Ex. B-1). Defendant's "Red, White, and Blue" mark is located on the bottom center of the wine bottle labels, below the stylized "WoodMill Winery" mark and above the description "70% Grape Wine & 30% Blueberry Wine." Pl.'s Ex. 3. "Red, White, and Blue" appears to be printed in the same color, size and font as the "WoodMill Winery"

mark; however the "WoodMill Winery" mark is stylized.[8]  *Id.*  The "Red, White, and Blue" is

larger in size and different in font than the description "70% Grape Wine & 30% Blueberry

Wine."  *Id.*  "Red, White, and Blue" is not italicized and is written in only large or small capital

letters, while "70% Grape Wine & 30% Blueberry Wine" is italicized and uses both capital and

lowercase letters.  *Id.*  Defendant's website includes a list of wines for sale—each wine is listed

by the name followed by its price on a separate line below and a one-sentence description of the

wine.  Def.'s Mem. Opp. Summ. J. 3.  "Red White and Blue" is listed as the name of a wine,

followed by its price and a description of the wine.  Def.'s Mem. Opp. Summ. J. 3; Pl.'s Ex. B-1.

The marks are very similar in appearance.  Plaintiff's "RED, WHITE, & BLUE" mark

and Defendant's "Red, White, and Blue" are nearly identical phrases—Defendant uses "and"

instead of an ampersand.  The marks are similarly sized and positioned on wine-bottle labels—at

the bottom center, below the winery's mark and above the description of the wine or type of

wine.  Pl.'s Ex. 3; Pl.'s Ex. 7-1.  Additionally, the marks identify very similar goods—both

goods are table wine with similar alcohol content and price point.  Answer 3.  However,

Defendant's wine is not solely a grape-based table wine but a blend of grape wine and blueberry

wine.  Also, the facilities used in business are generally similar—both parties operate vineyards

and wineries.  Defendant has not introduced evidence to the contrary regarding the similarity of

the marks, the goods the marks identify, or the commercial facilities of the parties.

Both parties use similar methods of advertising and employ the marks similarly in

advertising.  Answer 3.  Plaintiff and Defendant both have websites promoting their wine and

both parties use the mark on their respective websites to promote the sale of the identified wine.

van Loben Sels Decl. ¶ 2; Pl.'s Ex. A-1, B-1.

_____

[8] "WoodMill" is printed inside of the outline of a banner, with a sun above the banner and grape bunches
below the banner, and "WINERY" is punctuated with interpoints, W•I•N•E•R•Y.

3. Defendant's Intent and Actual Confusion

Whether the defendant intended to trade on the plaintiff's good will or cause consumer confusion concerning the source or origin of goods, and whether there is evidence of actual confusion are both very probative factors in the likelihood-of-confusion analysis. *Pizzeria Uno*, 747 F.2d at 1527 ("If there is intent to confuse the buying public, this is strong evidence establishing likelihood of confusion, since one intending to profit from another's reputation generally attempts to make his signs, advertisements, etc., to resemble the other's so as deliberately to induce confusion."); *Lone Star*, 43 F.3d at 933 ("[E]vidence [of actual confusion] is entitled to substantial weight as it provides the most compelling evidence of likelihood of confusion."). However, "it is black letter law that actual confusion need not be shown to prevail under the Lanham Act, since actual confusion is very difficult to prove and the Act requires only a likelihood of confusion as to source." *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 875 (2nd Cir. 1986).

Intent to cause confusion among consumers in order to trade on Plaintiff's good will could be demonstrated by Defendant's prior knowledge of Plaintiff's mark "accompanied by similarities so strong that it seems plain that deliberate copying has occurred." *U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*, 800 F. Supp. 2d 515, 536 (S.D.N.Y. 2011). No evidence in the record shows that Defendant intended to cause consumer confusion about the origin, nature, or quality of the goods in question, or intended to trade on Plaintiff's goodwill in the industry. Evidence on record shows that Defendant used "Red, White, and Blue" (noncommercially) before Plaintiff started using "RED, WHITE, & BLUE." Cagle Decl. ¶ 2; Def.'s Ex. 1-1, 2-1; Wersen Decl. ¶ 6. Defendant reportedly did not know about Tassel Ridge or its "RED, WHITE,

& BLUE" wine before receiving the cease-and-desist letter on March 7, 2011.  Def.'s Mem. Opp. Summ. J. 9.

Additionally, no evidence on record establishes that there has been actual consumer confusion regarding the nature or origin of Defendant's wine.  Plaintiff has not introduced sufficient facts showing that a consumer has mistaken or would mistake Defendant's wine for Plaintiff's "RED, WHITE, & BLUE" wine.

4.  Quality of Defendant's Product and Sophistication of the Consuming Public

Quality of a defendant's product is most relevant when the defendant produces a cheap imitation of a competitor's trademark-protected goods.  *Sara Lee*, 81 F.3d at 467.  Additionally, sophistication of the consuming public is generally only relevant if the market for the goods at issue is not the general public, but sophisticated consumers.  *Id.*  In the present case, there is no evidence establishing that the parties' goods are of substantially different quality.  Additionally, neither party has alleged that persons who buy such table wine are generally more sophisticated about that product than those who comprise the market for other goods.

Plaintiff has shown (1) its trademark is inherently distinctive; (2) the parties use similar marks; (3) the parties use similar facilities in business; and (4) the parties use similar advertising. The similarity of the marks used, the goods the marks identify, the facilities used in business, and advertising all weigh in favor of Plaintiff.  Confusion could occur if a consumer, without knowledge of the distinct wineries, receives a favorable review of Plaintiff's "RED, WHITE, & BLUE" wine and attempts to purchase the wine, via the Internet or otherwise.  This consumer could accidentally purchase Defendant's wine instead of Plaintiff's wine.  Since Plaintiff's wine is a grape-based wine and Defendant's wine is a blend of grape and blueberry wine, this accident might be less likely to happen.

Although several relevant factors weigh in Plaintiff's favor, Plaintiff has failed to show that there is no genuine dispute as to any material fact regarding the likelihood of consumer confusion, particularly because the factors of intent, noted as a "major" factor in *Pizzeria Uno*, and actual confusion, which has been deemed the "most important factor," although not necessary to find a likelihood of confusion, add no weight in favor of such a finding. *George & Co. v. Imagination Entm't Ltd.*, 575 F.3d 383, 398 (4th Cir. 2009). The evidence does not show any instances of actual confusion or that Defendant intended to create consumer confusion about the origin or source of its good. Additionally, even though the marks identify similar goods, genuine issues of material fact exist as to whether the differences in composition of the parties' wine affect the likelihood of confusion. Based on these factors, a reasonable trier of fact could determine that consumer confusion is unlikely to occur. While Plaintiff has shown that consumer confusion is possible, it has not established that no reasonable jury could find otherwise.

C. Affirmative Defense: Fair Use

The affirmative defense of descriptive fair use, designated by 15 U.S.C. 1115(b)(4), is a complete defense and bars any liability for trademark infringement. In order to establish statutory fair use, Defendant must prove that the term "Red, White, and Blue" and "Red White and Blue" (1) was not used as a trademark or to indicate the source of the goods; (2); was used descriptively, only in order to describe its own goods; and (3) was used in good faith. 15 U.S.C. 1115(b)(4); *KP Permanent Make-Up*, 543 U.S. at 118.

1. Non-Trademark Use

In order to establish the first element of a fair-use defense, Defendant must prove that it did not use "Red, White, and Blue" to identify the source or origin of its own goods or

distinguish its goods from the goods of its competitors. *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1040 (9th Cir. 2010). Possible indicators of trademark use include whether Defendant used the term as a symbol to attract public attention, or whether Defendant took precautionary measures in labeling its goods to ensure that the term would not appear to be used or understood as a trademark. *Id.* Evidence of both can be demonstrated by the physical appearance of the challenged term and the placement and visual prominence of the challenged term. *Id.*

Defendant argues that "Red, White, and Blue" is not used as a trademark but as a descriptive term. In support of this argument, Defendant asserts that "WoodMill Winery" is used as a trademark to identify the source of the wine and to distinguish the product from its competitor's products. Defendant asserts that "Red, White, and Blue" is used descriptively and to distinguish the product from the other products sold by Defendant. To this point, Plaintiff contends that Defendant's "house mark"—or the "WoodMill Winery" mark—may be used in conjunction with the "Red, White, and Blue" product mark without detracting from the trademark function of "Red, White, and Blue." McCarthy, Trademarks and Unfair Competition, § 7:5 (4th ed. 2004) (citing *Kellogg Co. v. General Foods Corp.*, 166 U.S.P.Q. 281 (T.T.A.B. 1970)).

On its wine bottle labels, Defendant plainly indicates that "WoodMill Winery" is the source of the wine. "Red, White, and Blue" is inferior to the "WoodMill Winery" mark in placement and style. The term is above the "70% Grape & 30% Blueberry Wine" description, and "Red, White, and Blue" is larger, bolder, and more clearly read than the font used for the description. Similarly, on its website, "WoodMill Winery" is the prominent source indicator, but "Red, White, and Blue" is used as the name of a particular wine WoodMill Winery produces.

In *Kellogg*, the product mark, "POP-TARTS" was "always displayed in large script and in a logo distinctly different from 'KELLOGG' and in a manner likely to create a commercial impression separate and apart from 'KELLOGG.'" *Kellogg*, 166 U.S.P.Q. at 282–83. Defendant's term "Red, White, and Blue" appears to be the same size and the same font as "WoodMill Winery." Additionally, "WoodMill Winery" is stylized, so that it is the more prominent mark on the bottle. However, a reasonable trier of fact may find that "Red, White, and Blue" is used as a symbol used to get consumers' attention and that Defendant attempted to build a commercial association between "Red, White, and Blue" and WoodMill Winery, which would indicate trademark use. *Kelly-Brown v. Winfrey*, 106 U.S.P.Q.2d 1875, 1884–87 (2nd Cir. May 31, 2013).

Plaintiff also contends that Defendant uses "Red, White, and Blue" on wine labels in a manner very similar to Plaintiff's use of the "RED, WHITE, & BLUE" trademark on wine bottle labels. Although true, this does not necessarily mean that Defendant uses or intends to use "Red, White, and Blue" as a trademark.

Additionally, Plaintiff argues that Defendant's use of "Red, White, and Blue" as a trademark is consistent with Defendant's use of other trademarks on wine bottle labels, such as "Carolina Jubilee" or "Black Velvet." Whether the terms "Carolina Jubilee" and "Black Velvet" are legally valid and protectable trademarks has not been established. Plaintiff also asserts that Defendant intended to use "Red, White, and Blue" as a trademark because it listed the term as a fanciful name on its COLA application, which is defined as "a term used in addition to the brand name for the purposes of further identifying a product." COLAs Online eNews, TTB, February 2011. While there is probative value in Defendant listing "Red, White, and Blue" as the fanciful

name for wine on its COLA application, it does not sufficiently demonstrate that Defendant used the term as a trademark.

Genuine issues of material fact therefore exist as to whether Defendant used "Red, White, and Blue" as a trademark.

2.   Descriptive Use

A descriptive term is not inherently distinctive and is not accorded protection as a trademark as it merely describes a function, use, characteristic, size, or intended purpose of a product and does not identify the source of the product. *Sara Lee*, 81 F.3d at 463–64. A term is defined as descriptive "if it identifies a characteristic or quality of an article or service" while, as previously indicated, a suggestive term is "one which 'suggests rather than describes,' some characteristic of the goods to which it is applied and requires the consumer to exercise his imagination to reach a conclusion as to the nature of these goods." *Pizzeria Uno*, 747 F.2d at 1528 (quoting *Soweco, Inc. v. Shell Oil Co.*, 617 F.2d 1178, 1183 (5th Cir. 1980)). Often, the difference between the designations is "a difficult distinction to draw." *Id.* at 1528 (citing *Union Carbide Corp. v. Ever-Ready, Inc.*, 531 F.2d 366, 379 (7th Cir. 1976) ("Generally speaking, if the mark imparts information directly, it is descriptive. If it stands for an idea which requires some operation of the imagination to connect it with the goods, it is suggestive.")).

Defendant contends that "Red, White, and Blue" is a descriptive term because it describes certain qualities and characteristics of the wine. The wine is a blend of red muscadine wine, golden scuppernong wine, and blueberry wine. Red muscadine wine is red in color, so that "red" is descriptive of both the color of the wine and the name of the grape. Dellinger Decl., Ex.

16. Golden scuppernong wine is light in color and might be described as "white wine."[9] Dellinger Decl., Ex. 17. Blueberry wine is dark with a blue tint, so that "blue" is descriptive of the color of the wine and the color of the fruit used to make the wine. Dellinger Decl., Ex. 16.

A reasonable trier of fact could determine that "Red, White, and Blue" simply and accurately described the constituent wines. However, a reasonable trier of fact could also find that "Red, White, and Blue" is not so descriptive that a consumer of average knowledge would be able discern the nature of the product, without more. Genuine issues of material fact exist as to whether Defendant used "Red, White, and Blue" in its primary, descriptive sense.

3. Good Faith

The last element of the fair use defense involves the same issue raised by a defendant's intent in the likelihood-of-confusion analysis, which is whether the defendant intended "to trade on the good will of the trademark holder by creating confusion as to source or sponsorship." *EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc.*, 228 F.3d 56, 66 (2nd Cir. 2000) ("In analyzing the proper scope of fair use good faith, precedents discussing good faith as the sixth *Polaroid* factor in the likelihood of confusion analysis are relevant because the focus of the inquiry is the same, namely, whether defendant in adopting its mark intended to capitalize on plaintiff's good will."). As previously discussed, bad faith could be demonstrated in part by Defendant's prior knowledge of Plaintiff's mark. *U.S. Polo Ass'n*, 800 F. Supp. 2d at 536.

Plaintiff argues that its trademark registration on the Principal Register gave Defendant constructive knowledge of Plaintiff's mark. However, failing to conduct a trademark search is not evidence of bad faith. *George & Co. LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 397 (4th Cir. 2009). There is no evidence that Defendant had actual knowledge of Plaintiff's registered

---

[9] Defendant asserted that it would be common in the wine industry to describe wines with a gold color as "white wines." Dellinger Decl, Ex. 17. Plaintiff acknowledged some people might categorize wine from "Golden Scuppernong" grapes as "white wine." Pl.'s Reply Br. Supp. Summ. J. 10.

trademark before receiving the cease-and-desist letter on March 7, 2011, and there is no evidence that Defendant acted in bad faith by adopting "Red, White, and Blue" with the intent to profit from Plaintiff's goodwill.

## V. CONCLUSION

Because genuine issues of material fact exist as to the likelihood of confusion, Plaintiff is not entitled to summary judgment on its claims against Defendant. Because genuine issues of material fact exist as to whether Defendant used "Red, White, and Blue" as a trademark and whether Defendant used "Red, White, and Blue" descriptively, neither party is entitled to summary judgment on Defendant's affirmative defense of fair use.

## VI. ORDER

**IT IS, THEREFORE, ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. 17) be **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (Doc. 29) be **DENIED**.

Signed: October 9, 2013

Richard L. Voorhees
United States District Judge